**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| EMILY FARMER,<br><br>        Plaintiff,<br><br>v.<br><br>SYNCHRONY BANK, N.A.,<br><br>        Defendant. | Case No 1:22-cv-01816<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*<br>2. Intrusion of Privacy – Intrusion Upon Seclusion. |

Plaintiff, Emily Farmer, ("Ms. Farmer" or "Plaintiff"), by and through her attorneys, alleges the following violations of state and federal law against Defendant, Synchrony Bank, N.A. ("Synchrony" or "Defendant"):

## INTRODUCTION

1. Count I of Plaintiff's Complaint is based upon the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The TCPA is a federal statute that broadly regulates the use of automated telephone equipment. Among other things, the TCPA restricts the use of automatic dialers or prerecorded messages, and delegates rulemaking authority to the Federal Communications Commission ("FCC").

2. Count II Plaintiff's Complaint is based upon the Invasion of Privacy - Intrusion upon Seclusion, as derived from § 652B of the Restatement (Second) of Torts. § 652B prohibits an intentional intrusion, "physically or otherwise, upon the solitude or

seclusion of another or his private affairs or concerns… that would be highly offensive to a reasonable person."

## JURISDICTION AND VENUE

3. Jurisdiction of this court arises under 47 U.S.C. § 227 *et seq.* and 28 U.S.C. § 1331.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims occurred in this District.

5. Defendant transacts business here; therefore, personal jurisdiction is established.

## PARTIES

6. Plaintiff is a natural person residing in the city of Arvada, Jefferson County, Colorado.

7. Synchrony is an FDIC-insured bank that also issues credit cards to consumers. Synchrony can be served at its principal place of business, located at 170 West Election Road, Suite 125, Draper, Utah 84020.

8. Synchrony also enforces or attempts to enforce an obligation that is owed or alleged to be owed to it by a consumer as a result of a consumer transaction.

9. At all times relevant, Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

10. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

11. On or around April 2019, Plaintiff acquired a credit card from Synchrony Bank.

12. As a result of economic issues being faced by her employer during the COVID-19 pandemic Plaintiff lost her job of ten years.

13. Plaintiff struggled to find a new job. Between March 2020 and April 2021, Plaintiff was either unemployed or working for significantly less income. She was also laid off again due to COVID-19.

14. As a result of her employment issues Plaintiff was unable to pay her bills and could no longer make all of her payments to Synchrony.

15. In or around July 2020, Defendant began contacting Plaintiff at her cell phone number ending in 1230.

16. Defendant was attempting to collect on an alleged debt owed from Plaintiff which was the result of a consumer credit transaction.

17. Defendant called from at least the following two (2) numbers: (972) 512-3474 and (800) 213-5077.

18. Upon information and belief, all telephone numbers used to call Plaintiff are owned, operated, or controlled by Synchrony or its agents.

19. Upon information and belief, Synchrony utilizes different numbers to conceal the origin of the calls and make it difficult for a debtor to block or otherwise avoid the calls.

20. On or about January 3, 2021, at 10:21 a.m., Plaintiff received a phone call from telephone number (972) 512-3474. After Plaintiff answered the phone, she said hello and then noticed a pause before the Synchrony representative began speaking, consistent with the use of an automatic dialing system.

21. The Synchrony representative stated that Synchrony was attempting to collect a debt owed by Plaintiff.

    Plaintiff told the Synchrony representative she was going through severe financial hardship, and as a result she could not afford to make any payments, nor did she want Synchrony to call her. She further stated that any future communication to her should be delivered by mail only, thereby revoking consent to receive calls to her cell phone.

22. Despite revoking consent, Plaintiff continued to be harassed by phone calls from Synchrony Bank multiple times per day.

23. Between January 3, 2021 and March 31, 2021, Synchrony called Plaintiff at least **one-hundred and twenty (120) times** after Plaintiff asked Synchrony to cease calling and communicate through the mail only.

24. Upon information and belief, each time Plaintiff received a phone call from Synchrony there was a brief pause prior to speaking with a representative, indicating the use of an automatic telephone dialing system.

25. Synchrony called Plaintiff multiple times a day; further indicating the use of an automatic telephone dialing system.

26. With the loss of income from losing her jobs and being unable to find a new one Plaintiff was barely able to afford basic necessities.

27. Upon information and belief, Synchrony was well aware of Plaintiff's financial hardships due to COVID-19 but continued to harass her by calling her multiple times a day even though she revoked her consent to be contacted via phone.

28. Synchrony called Plaintiff virtually every day, including on the weekends.

29. Synchrony called Plaintiff multiple times a day, sometimes up to four (4) times a day.

30. For example, Synchrony called Plaintiff four (4) times on January 10, 2021, at 8:20 a.m., 9:28 a.m., 12:11 p.m., and 2:04 p.m.

31. Synchrony called Plaintiff at all times during the day.

32. Plaintiff would receive calls from Synchrony as early as 8:00 a.m. and as late as 8:00 p.m.

33. The volume and frequency of Synchrony's calls indicate the use of random or sequential number generators.

34. Upon information and belief, Defendant's system "use[s] a random [or sequential] generator to determine the order in which to pick phone numbers from a preproduced list" and "then store[s] those numbers to be dialed at a later time," consistent with footnote 7 in *Facebook, Inc. v. Duguid*, 28 Fla. L. Weekly Fed. S. 721, at *6 n.7 (U.S. 2021).

35. Upon information and belief, Defendant's system used to call Plaintiff has the capacity to store a telephone number using a random or sequential number generator.

36. Upon information and belief, Defendant's system used to call Plaintiff reorders telephone numbers based on certain rules (such as geography, time of day, and whether the consumer answers the call) using a sequential number generator.

37. Upon information and belief, Defendant's system used to call Plaintiff has the capacity to call multiple numbers simultaneously.

38. Upon information and belief, Synchrony used an automatic telephone dialing system to call Plaintiff's cell phone.

39. Synchrony called Plaintiff with pre-recorded messages and left pre-recorded messages on her cell phone voicemail.

40. Synchrony called Plaintiff at or near the same time on multiple different days, consistent with the use of an automatic telephone dialing system.

41. Upon information and belief, Synchrony's automatic dial failed to return on to the on-hook state within 60 seconds of completion of dialing.

42. On at least two different occasions, Synchrony called Plaintiff two times in a row with only a minute between each call, including:

    a. On January 11, 2021, Synchrony called Plaintiff at 3:27 p.m. and again at 3:28 p.m.

    b. On February 6, 2021, Synchrony called Plaintiff at 11:12 a.m., and again at 11:14 a.m.

43. Defendant is familiar with the TCPA and Intrusion Upon Seclusion.

44. Synchrony's conduct was not only willful but was done with the intention of causing Ms. Farmer such distress, to induce her to pay the debt or more than she was able to pay.

45. Defendant's intrusion upon Plaintiff's seclusion was highly offensive to the reasonable person, oppressive, outrageous, and exceeded reasonable collection efforts. Defendant's conduct was especially unreasonable because it called relentlessly shortly after Plaintiff had explained why she could not repay Defendant and expressly revoked consent to be called.

46. Every call to Plaintiff's cell phone from Defendant resulted in loss of use of her cell phone, distraction, frustration, embarrassment, and anxiety as Plaintiff would have to pull out the cell phone, check the number, and dismiss the call.

47. Each pre-recorded voicemail left by Defendant filled up Plaintiff's voicemail to where no one calling her could leave messages.

48. Defendant's incessant calling was done with the full knowledge that Plaintiff was already dealing with the anxiety and stress associated with financial hardship, and after Plaintiff respectfully requested that calls to her cell telephone stop and that all communications be conducted via mail.

49. Upon information and belief, Synchrony knew it was calling Plaintiff's cell phone using an automatic telephone dialing system.

50. Synchrony's incessant and unwanted phone calls to Plaintiff's personal cell phone intruded upon Plaintiff's physical seclusion.

51. Synchrony's conduct could reasonably be expected to threaten or harass Plaintiff.

52. Synchrony's intrusion upon Plaintiff's seclusion was highly offensive to the reasonable person and exceeded reasonable collection efforts.

53. Plaintiff often her parents in tears about the incessant calls from Synchrony.

54. Plaintiff also often discussed the incessant calls from Synchrony with her boyfriend, who witnessed the calls and their effect on Plaintiff.

55. During the period of the calls from Synchrony, Plaintiff had difficulty sleeping and lost about twenty pounds from the constant stress of the calls.

56. As a result of Defendant's conduct, Plaintiff has sustained actual damages including but not limited to, emotional and mental pain and anguish, stress, frustration, anxiety, sleeplessness, embarrassment, weight loss, and the loss of use of her personal cell phone.

## COUNT I
### (Violations of the TCPA, 47 U.S.C. § 227 *et seq.*)

57. Plaintiff incorporates by reference the above factual allegations as though fully stated herein.

58. Defendant violated the TCPA. Defendant's violations include, but are not limited to, the following:

    a. Within four years prior to the filing of this action, on multiple occasions, Defendant violated TCPA 47 U.S.C. § 227 (b)(1)(A)(iii), which states in pertinent part, "It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice — to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call.

    b. Within four years prior to the filing of this action, on multiple occasions, Defendant willfully and/or knowingly contacted Plaintiff using an artificial or prerecorded voice or an automatic telephone dialing system and as such, Defendant knowing and/or willfully violated the TCPA.

59. Defendant's acts, as described above, were done willfully/knowingly in violation of the TCPA.

60. As a result of Defendant's violations of 47 U.S.C. § 227, Plaintiff is entitled to an award of five hundred dollars ($500.00) in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B). If the Court finds that Defendant knowingly and/or willfully violated the TCPA, Plaintiff is entitled to an award of one thousand five hundred dollars ($1,500.00), for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT II
### (Intrusion Upon Seclusion)

61. Plaintiff incorporates by reference the above factual allegations of this Complaint as though fully stated herein.

62. Restatement of the Law, Second, Torts §652(b) defines intrusion upon seclusion as, "One who intentionally intrudes…upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person."

63. Defendant violated Plaintiff's privacy.  Synchrony's violations of Ms. Farmer's privacy include, but are not limited to, the following:

    a. Synchrony intentionally intruded, physically or otherwise, upon Ms. Farmer's solitude and seclusion by engaging in harassing phone calls in an attempt to collect on an alleged debt despite Plaintiff's letter and oral request for the calls to cease.

    b. The number and frequency of the telephone calls to Ms. Farmer's cellular telephone, which is always either on her person or nearby, by Synchrony after a request for the calls to cease constitute an intrusion on Ms. Farmer's privacy and solitude.

64. Defendant's conduct would be highly offensive to a reasonable person as Plaintiff received calls that often-interrupted Plaintiff's work and sleep schedule and caused her physical symptoms from stress, including significant weight loss.

    a. Synchrony's acts, as described above, were done intentionally with the purpose of coercing Ms. Farmer to pay the alleged debt.

    b. Synchrony conducted its harassment campaign against Ms. Farmer throughout the COVID-19 pandemic.

65. By calling the Plaintiff approximately 120 times over such a short period after revoking consent to be called, any reasonable person would be offended by Defendant's conduct.

66. As a result of Synchrony's violations of Ms. Farmer's privacy, Synchrony is liable to Ms. Farmer for actual damages. If the Court finds that Synchrony's conduct was egregious, Ms. Farmer may recover punitive damages.

## PRAYER OF RELIEF

**WHEREFORE**, Plaintiff Emily Farmer respectfully requests judgment be entered against Defendant Synchrony's for the following:

A. Statutory damages of $500.00 for each and every negligent violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

B. Statutory damages of $1500.00 for each and every knowing and/or willful violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3);

C. Actual damages for Synchrony's intrusion upon Ms. Farmer's seclusion;

D. Punitive damages for Synchrony's intrusion upon Ms. Farmer's seclusion;

E. Any pre-judgment and post-judgment interest as may be allowed under the law; and

F. Any other relief that this Honorable Court deems appropriate.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

Respectfully submitted this 22nd day of July 2022.

PRICE LAW GROUP, APC

*/s/David Chami*
David A. Chami, AZ #027585
PRICE LAW GROUP, APC
8245 North 85th Way
Scottsdale, AZ 85258
T: 818-600-5515
F: 818-600-5415
david@pricelawgroup.com
*Attorneys for Plaintiff*
*Emily Farmer*